IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  8:09CV454 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| $103, 0000.00 IN UNITED STATES CURRENCY, | ) ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| | ) | |
| Defendant. | ) | |
| | ) | |
| TRI Q. ON, | ) | |
| | ) | |
| Claimant. | ) | |

This matter was tried to the Court on November 16, 2010.  The Claimant, Tri Q. On, appeared pro se and telephonically from the state institution in which he is incarcerated. The case was submitted after trial.

## FINDINGS OF FACT

1. On August 25, 2009, Douglas County Sheriff's Officer David J. Wintle, a certified K-9 officer, stopped a vehicle driven by Tri Q. On, for following the vehicle in front of him too closely.

2. The vehicle was a rental vehicle.

3. On provided his driver's license and the rental agreement for the vehicle.

4. On was seated in Officer Wintle's police car while Officer Wintle returned to the vehicle driven by On to speak with the only passenger, Ms. Lee (phonetic), On's girlfriend.

5.      Ms. Lee provided her identification. She said she and On were returning from her girlfriend's wedding in Milwaukee. Lee said she and On stayed with the girlfriend, whom On did not know.

6.      Officer Wintle returned to his car, spoke with On, and told him the reason for the stop. On said he and Lee were returning from a wedding in Milwaukee. However, On said a male friend of his was married, they stayed with the male friend, and Lee did not know the male friend well.

7.      On said he lived in Oakland, California, and Lee lived in Seattle, Washington.

8.      On said he was an unemployed mechanic and that Lee worked.

9.      On rented the car for one month, but he owned a car that he said broke down after he rented the car he was driving.

10.     Officer Wintle again spoke with Lee, who confirmed her story regarding their trip.

11.     When asked, Lee answered "no" to Officer Wintle's question regarding whether any narcotics, weapons, stolen items, or amounts of currency over $10,000 were in the car. Lee agreed to allow Officer Wintle search the vehicle.

12.     Officer Wintle returned to his cruiser and spoke again with On. On conformed his story about the wedding. Officer Wintle posed the same question to On regarding the presence of any narcotics, weapons, stolen items, or amounts of currency over $10,000. On answered that he had none of those items in the vehicle. On agreed to allow officer Wintle search the vehicle.

13.     Officer Wintle handed On a consent-to-search form. On appeared to read the document. Officer Wintle did not read it aloud, but he explained the contents of the

form to On and told On that he had a right to refuse the search or to stop the search at any time.  On signed the form.  (Ex. 3.)

14. Officer Wintle called Deputy Bargstadt and asked him to come as backup to assist with the stop and search.

15. Deputy Bargstadt searched the trunk and found a black nylon zippered duffle bag that contained two other nylon bags.  All three bags were empty.

16. The officers continued searching the trunk and found a green nylon zippered bag with papers belonging to On and a large amount of United States currency, the Defendant currency, later determined to total $103,000.00.  The currency was in a plastic grocery bag in bundles, with the bills folded in half and secured with rubber bands.

17. The Officers also found: a ziploc bag containing marijuana; a heat sealed food saver bag containing marijuana; a dryer sheet; a cellular telephone; and a digital scale.

18. On was arrested for possession of marijuana.  On that date, he possessed 411 grams of marijuana.

19. On, Lee, the car and its contents were transported to the Sheriff's office.

20. The officers conducted a "discretionary sniff" of the cash with Kubo, Officer Wintle's dog, in the locker room at the Sheriff's office.  Kubo first sniffed the locker room without the cash being present, and he did not alert.  The plastic bag containing all the seized currency was then placed in a locker, the door to the locker was closed, and Kubo was brought in the room again.  Kubo indicated to an odor of narcotics coming from the locker containing the currency.

21.   Bellevue Police Officer Dennis O'Connor and Douglas County Deputy Kevin Manak attempted to interview On, and they completed a rights advisory form with him. Because On requested an attorney, an interview was not held. (Ex. 4.)

22.   The Defendant property was seized. The Defendant property is in the judicial district of Nebraska and is being held by the United States Marshal's Service.

23.   On completed a disclaimer form, stating that the currency belonged to him. (Ex. 2.)

24.   On February 22, 2010, On was convicted in the Douglas County District Court in Douglas County, Nebraska, of possession with intent to distribute marijuana and possession of currency in connection with that marijuana. On May 11, 2010, Douglas County District Judge Gregory M. Schatz sentenced On to two to four years on the marijuana count and twenty to thirty-six months on the currency count. Although On's native language is Vietnamese, he did not use the services of an interpreter in connection with the criminal proceedings. On has lived in the United States for thirty years.

25.   On is a professional high-stakes gambler, and he has sustained several gambling losses from several casinos. (Ex. 102; Filing No. 37.)

26.   On does not know what his taxable income was for 2007, 2008, or 2009, and he has not produced evidence of taxable income for those years.

27.   On is a medical cannabis patient. (Ex. 102; Filing No. 37.)

28.   Immediately after seizure of the Defendant property, the United States Drug Enforcement Administration began forfeiture proceedings.

29.   The Plaintiff, the United States of America, filed a Complaint in this case against the Defendant property on December 16, 2009.

30. On filed a claim to the Defendant currency with the United States Drug Enforcement Agency, and he answered the Complaint.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1345, 1355 and 1395, and pursuant to 28 U.S.C. § 881. Venue in this district is proper under 28 U.S.C. § 1391.

2. The statutory bases for this lawsuit are 18 U.S.C. § 983 and 21 U.S.C. § 881.

3. 21 U.S.C. § 881(a)(6) provides in pertinent part for the forfeiture of "[a]ll moneys . . . furnished or intended to be furnished by any person in exchange for a controlled substance . . . all proceeds traceable to such an exchange, and all moneys . . . used or intended to be used to facilitate any violation of this subchapter [I to chapter 13 of Tile 21 of the United States Code]."

4. The Civil Asset Forfeiture Reform Act of 2000, 18 U.S.C. § 983, provides that in a suit or action brought under a civil forfeiture statute for the civil forfeiture of any property:

> (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture; [and]
>
> (3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. §§ 983(c)(1) and (3).

5. The term " 'facilitate' encompasses 'activity making the prohibited conduct less difficult or "more or less free from obstruction or hindrance." ' " *United States v. Real*

*Property Located at 3234 Washington Ave. N., Mpls., Minn.*, 480 F.3d 841, 843 (8th Cir. 2007) (quoting *United States v. Premises Known as 3639-2nd St., N.E., Mpls., Minn.*, 869 F.2d 1093, 1096 (8th Cir. 1989)).

6. Marijuana is a controlled substance. 21 U.S.C. § 812.

7. Specifically, in this case the government must establish by a preponderance of the evidence that the Defendant currency was substantially connected to drug trafficking, as required for civil forfeiture under 21 U.S.C. § 881(a)(6). *United States v. $117,920.00*, 413 F.3d 826, 829 (8th Cir. 2005).

8. Circumstantial evidence can be used by the United States to establish its burden of proof. *United States v. $84,615,* 379 F. 3d 496, 501 (8th Cir. 2004).

9. The government is not required to show evidence of, or trace the money to, a particular transaction. *United States v. U.S. Currency in the Amount of $150,660.00,* 980 F. 2d 1200, 1205 (8th Cir. 1992).

10. Possession of a large amount of cash is strong evidence that the cash is connected with drug activity. *See, e.g., United States v. $124,700*, 458 F.3d 822, 826 (8th Cir. 2006).

11. If the government meets its burden, in order to avoid forfeiture the Claimant has the burden of proving by a preponderance of the evidence that the Claimant is an innocent owner. 18 U.S.C. § 983(d)(1).

12. An "innocent owner" is defined as "an owner who – (i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the

forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A).

13. The term "owner" does not include "a person with only a general unsecured interest in, or claim against, the property." § 983(d)(6)(B)(i).

14. Turning to this case, the Court finds the testimony of Officer Wintle credible.

15. The Court finds the testimony of Tri Q. On not credible to the extent that he claims legitimate, innocent ownership of the Defendant currency. On has not corroborated his claims of legitimate ownership with any evidence that the currency came from employment, gambling wins, or any source other than drug activity.

16. The United States has shown, by a preponderance of the evidence, that the Defendant property is substantially connected to drug trafficking.

17. On has not demonstrated by a preponderance of the evidence that he is an innocent owner of the Defendant property.

18. The Defendant property is forfeitable to the United States.

IT IS ORDERED:

1. The Defendant property shall be forfeited to the United States;

2. A separate Judgment will be entered; and

3. The Clerk is directed to mail a copy of these Findings of Fact and Conclusions of Law to the Claimant, Tri Q. On, at his last known address.

DATED this 19th day of November, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge